**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | |
|---|---|
| **JAMIE EDELKIND** | **CIVIL ACTION NO. 06-1813** |
| **VS.** | **SECTION P** |
| **DAVID BLANCHET, ET AL.** | **JUDGE DOHERTY** |
| | **MAGISTRATE JUDE METHVIN** |

**REPORT AND RECOMMENDATION**

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* by *pro se* plaintiff Jamie Edelkind on October 13, 2006. Edelkind is an inmate in the custody of the Federal Bureau of Prisons.[1] He is currently incarcerated at the Federal Medical Center (FMC) Devens in Ayers, Massachusetts, however, when he filed this complaint he was incarcerated at the St. Martin Parish Corrections Center, Breaux Bridge, Louisiana. Plaintiff contends that Louisiana court officials conspired to deprive him of his right of access to the courts and due process of law by interfering with his ability to litigate child custody and support claims in Louisiana's Fifteenth Judicial District Court in the civil matter entitled *Jamie Edelkind v. Suzanne Boudreaux*, Docket Number C-20001572-H2. He named Fifteenth Judicial District Court Judge David Blanchet, Lafayette Parish Clerk of Court Louis J. Perret,, and his Deputy Clerk, Karen Quibedeaux as defendants. He seeks damages of $1,000,000 and relief in the nature of mandamus.

---

[1] Plaintiff was convicted of failure to pay child support (18 U.S.C. §228) in this court on June 16, 2006 in the matter entitled *United States of America v. Jamie Edelkind*, No. 6-05-cr-60067. On January 9, 2007 plaintiff was sentenced to serve 24 months in the custody of the Federal Bureau of Prisons. He was also convicted of unrelated violations of federal criminal law in the Northern District of Georgia and the District of Massachusetts.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** pursuant to the provisions of 28 U.S.C. §§1915(e)(2)(B)(iii) and 1915A(b)(2) since plaintiff "... seeks monetary relief from [defendants] who [are] immune from such relief..." and as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1) since plaintiff also seeks mandamus relief against state court officials.

***Background***

In his original complaint [doc. 1], plaintiff alleged the following: Sometime in November 2005 plaintiff filed a "*Rule Nisi*" against his ex-wife, Suzanne Boudreaux, in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana in the on-going civil proceeding entitled *Jamie Edelkind v. Suzanne Boudreaux,* Docket Number C 2000-1572-H2. When he filed this pleading, plaintiff was a pre-trial detainee who was incarcerated at the Lafayette Parish Corrections Center (LPCC) awaiting trial on federal child support charges in this court.

According to plaintiff, he made numerous requests for "indigent status" with regard to the matter pending in the Louisiana court. In March 2006, the Lafayette Parish Clerk of Court sent an *in forma pauperis* application to the plaintiff. Plaintiff provided the information requested and returned the application; on some unspecified date he was granted *in forma pauperis* status. A hearing on the merits of plaintiff's support and custody rule was scheduled for April 13, 2006. Ten days prior to the scheduled date of the hearing Judge Blanchet continued the hearing having determined that plaintiff's *in forma pauperis* application was deficient. Judge Blanchet provided notice of his ruling to plaintiff along with a copy of the statute relied upon in the deficiency

ruling. In response, plaintiff resubmitted his application and included the prison account information signed by an authorized representative of the LPCC. In addition, plaintiff requested that the April 13, 2006 hearing be allowed to proceed as originally scheduled. According to plaintiff, the hearing was never rescheduled and the court has not responded to any of plaintiff's motions or requests. Further, the Clerk of Court has refused to file any of plaintiff's motions but instead "holds" them and sends notice requesting the payment of "$0.00" before the motions may be processed. Plaintiff's motion to recuse Judge Blanchet has also been "refused."

Plaintiff contends that he has been denied due process and access to the courts by the conspiracy of the defendants. According to plaintiff, these violations of "... ministerial duties of the Clerk, at the behest of David Blanchet subjects [the defendants] to sanctions under the Louisiana Code of Civil Procedure Article 257." Plaintiff further contends that this conspiracy between Judge and Clerk deprives him of any state remedies.

Plaintiff prays for damages ($1 Million) since the defendants' "conduct has caused [plaintiff] to be falsely convicted of felony federal child support and has permitted plaintiff's ex-wife to estrange plaintiff's son in contravention of existing court orders." He also asks the court to "sanction" the defendants "... to prevent the misuse of duty..."

In his amended complaint filed on November 9, 2006 [doc. 4], plaintiff alleged, "In attempting to resolve my child support obligations as well as enforcing the state court order of Judge Blanchet ... the defendants have conspired to prevent my legitimate access to the court. Having been granted indigent status and relieved of paying costs initially, the defendants maliciously and with intent to thwart my access, rescinded such status without cause. Further, despite numerous correspondence which indicates that no fees are owed, the Clerk refuses to

accept any filings or schedule a hearing." [doc. 4, paragraph IV] In the prayer for relief plaintiff asked the court to : (1) find that he is entitled to pursue his civil action in state court without further impediment by any defendants; (2) award specific damages; and, (3) impose sanctions as permitted by law. [doc. 4, paragraph V]

## ***Law and Analysis***

### ***1. Frivolity Review***

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed a complaint and an amended complaint. He argued specific legal theories and provided a detailed recitation of the facts in support of his claims for relief. Plaintiff need not be afforded an opportunity for further amendment.

***2. Judicial Immunity***

***A. Judge Blanchet***

It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir.1994); see also *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir.1995) (*per curiam*); *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir.1993), abrogated on other grounds by *Arvie v. Broussard*, 42 F.3d 249 (5th Cir.1994). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir.1995), *cert. denied*, 516 U.S. 1129

(1996). Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Id.* at 10, 112 S.Ct. 286 (citation omitted). Judicial immunity is a matter of policy and is necessary because a judge "... should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption [and] [i]mposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Consequently, judicial immunity cannot be overcome even by allegations of bad faith or malice; such immunity " applies even when the judge is accused of acting <u>maliciously and corruptly</u>." *Id.* at 11, 112 S.Ct. 286 (internal quotation marks and citation omitted) (emphasis added). In determining whether a judge is entitled to immunity, "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993).

Judicial immunity can only be defeated by showing that the judge's actions were of a non-judicial nature or that he acted in the complete absence of jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991).

In determining whether the complained of actions were non-judicial in nature, that is to say, whether the judge acted outside the scope of his judicial capacity, the court should consider a variety of factors: (1) whether the precise act complained of is a normal judicial function;

(2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Malina*, 994 F.2d at 1124 (citation omitted). These factors must be broadly construed in favor of immunity. *Id.* (emphasis supplied).

Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 201-02, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). The issue of "immunity analysis rests on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id.* In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (emphasis supplied).

Generally, the complaint accuses Judge Blanchet of violating plaintiff's rights to due process and access to the court. The complaint further alleges that Judge Blanchet employed certain specific means to accomplish those ends. Liberally construed, plaintiff claims that (1) Judge Blanchet determined that plaintiff's *in forma pauperis* application was deficient; (2) he ordered plaintiff to amend his application to cure the deficiency; (3) he continued the previously scheduled April 13, 2006 hearing on plaintiff's rule; (4) he failed to reset the hearing date despite plaintiff's continued requests; (5) he ultimately rescinded plaintiff's *in forma pauperis* status; (6) he denied plaintiff's motion to recuse; and, (7) he directed the Clerk of Court to "hold"

plaintiff's subsequent motions and thus prohibited plaintiff from filing any new pleadings in the case.

Under Louisiana law, the determination of a litigant's right to proceed *in forma pauperis* is largely within the discretion of the court. La. C.C.P. arts. 5181 *et seq*.; see also *Jolivette v. Jolivette*, 386 So.2d 707 (La. App. 3 Cir. 1980); *McCoy v. Winn-Dixie of Louisiana, Inc*., 339 So.2d 976 (La. App. 4 Cir. 1976), reversed on other grounds, 345 So.2d 1175. Thereafter, trial judges have the authority and duty to subject *in forma pauperis* orders to continuing scrutiny to prevent abuse, *Roy v. Gulf States Utilities Co.*, 307 So.2d 758 (La. App. 3 Cir. 1975), and therefore, it is within the authority of a Louisiana trial judge to grant, modify, or rescind *in forma pauperis* status at any time during the litigation. *McCoy v. State ex rel. Jones*, 39,323 (La. App. 2 Cir. 2/17/2005), 901 So.2d 1109. Judge Blanchet's determination that plaintiff's *in forma pauperis* application was deficient, his order directing plaintiff to amend the application, his order rescinding *in forma pauperis* status, and his order directing the Clerk of Court to "hold" subsequent filings, were all actions of a judicial nature.

Furthermore, all judges have the inherent power to control the dispositions of their own docket, see *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed.153 (1936), therefore Judge Blanchet's order upsetting the April 13, 2006 hearing was likewise of a judicial nature. Finally, Louisiana judges have the authority to examine and ultimately deny recusal motions that fail to set forth valid grounds for recusation. La. C.C.P. art. 154. Thus, Judge Blanchet's ruling on plaintiff's Motion to Recuse was likewise of a judicial nature.

Therefore, with regard to the first *Malina* factor – "whether the precise act complained of is a normal judicial function" – the court addressing such claim must "examine the 'nature and

function' of the act, not the act itself." *Id.* at 1124 (quoting *Mireles*, 502 U.S. at 13, 112 S.Ct. 286). Ruling on matters pending before the court are clearly judicial functions.[2] See *Mireles*, 502 U.S. at 12, 112 S.Ct. 286; *Malina*, 994 F.2d at 1124. Whether or not Judge Blanchet acted maliciously, or in excess of his authority is of no moment. *Stump*, 435 U.S. at 356-57, 98 S.Ct. At 1099.

With regard to the remaining factors, it must be presumed that Judge Blanchet issued his order in the Lafayette Parish Courthouse. Further, there can be no doubt but that the controversy centered around a case pending before the court (*Jamie Edelkind v. Suzanne Boudreaux*, Docket Number C 20001572-H2) and that Judge Blanchet acted in his official capacity as Judge of the Fifteenth Judicial District Court.

Again, that Judge Blanchet is alleged to have erred, that he is alleged to have acted with malice, or is alleged to have exceeded the authority granted to him by law is of no moment since "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority ...." *Stump v. Sparkman*, 435 U.S. at 356-57, 98 S.Ct. at 1105 (quoted case omitted). Moreover, a plaintiff's "[d]isagreement with the action taken by a judge ... does not justify depriving that judge of his immunity, nor does the fact that tragic

---

[2] Examples of "non-judicial" acts abound in the reported jurisprudence; however, such acts are clearly distinguishable from the types of acts alleged herein. See: *Richardson v. Koshiba*, 693 F.2d 911 (9th Cir.1982) (act of appointing state judges involves an executive not a judicial act); *Goodwin v. Circuit Court of St. Louis County, Mo.*, 729 F.2d 541 (8th Cir.1984) (decision to remove a hearing officer was an administrative rather than a judicial act); *Guercio v. Brody*, 814 F.2d 1115 (6th Cir.1987) (judge not shielded by judicial immunity for act of firing confidential personal secretary); *McMillan v. Svetanoff*, 793 F.2d 149 (7th Cir.1986) (firing court reporter is not a judicial act); *Harper v. Merckle*, 638 F.2d 848 (5th Cir.1981) (holding a contempt proceeding and ordering plaintiff incarcerated were not judicial acts where controversy that led to incarceration did not center around any matter pending before the judge, but around domestic problems of plaintiff's former wife who worked at the courthouse).

consequences ensue from the judge's action deprive him of his absolute immunity." *Id.* at 363-64, 98 S.Ct. at 1108-09.

In other words, Judge Blanchet retained absolute immunity even though it is alleged that he conspired with the other defendants to deprive plaintiff of due process and access to the courts. See, for example, *Brandley*, 64 F.3d at 201 (state trial judge did not exceed reasonable bounds of his judicial role in capital murder prosecution, so as to lose judicial immunity, by allegedly accompanying prosecutor and court clerk to city dump to retrieve evidence that he believed had been disposed of); *Young v. Biggers*, 917 F.2d 873, 877 (5th Cir.1990), on reh'g, 938 F.2d 565, 569 n. 5 (5th Cir.1991) (judge was absolutely immune from claim that he framed plaintiff for robbery); *Freeze v. Griffith*, 849 F.2d 172, 174 (5th Cir.1988) (judge was absolutely immune from claim that he conspired with others to suppress exculpatory evidence.)

In addition to the foregoing, another factor sometimes cited in cases examining immunity, is "... the correctability of the error on appeal." *Butz v. Economou*, 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978); *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 501, 88 L.Ed. 2d 507 (1985). Plaintiff claims that the actions of the defendants have deprived him of access to the courts and that he "... has no state means to receive redress..." [doc. 1-1, p. 4] Plaintiff is mistaken. Under Louisiana law, the Louisiana Supreme Court exercises general supervisory jurisdiction over all other courts in the state. La. Constitution, Art. 5, §5(A). Further, the Courts of Appeal have supervisory jurisdiction over the district courts within their geographical jurisdiction. La. Constitution, Art. 5, §10(A). In other words, if plaintiff was dissatisfied with the trial court's handling of his civil suit, he could have invoked the supervisory jurisdiction of the appropriate court of appeal or the Louisiana Supreme Court. Having failed to

avail himself of this remedy does not entitle him to avoid well-established doctrines of judicial immunity.

***B. Clerk of Court Perrett and Dy. Clerk of Court Quibedeaux***

Further, plaintiff has alleged that Louis Perrett, the Lafayette Parish Clerk of Court, and his deputy, Karen Quibedeaux committed various acts "... in violation of the ministerial duties of the Clerk, at the behest of [Judge] David Blanchet..." [doc. 1-1, p. 4] Thus, plaintiff charges that the court clerks' actions were taken under orders given by Judge Blanchet. That being the case, Perrett and Quibedeaux are likewise entitled to absolute immunity. See *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir.2001). This is so because Clerks of Court "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir.1981).

As noted above, Judge Blanchet acted in his judicial function when he denied plaintiff *in forma pauperis* status, continued the hearing on his child support and custody rule, and directed that no further pleadings be accepted. According to the plaintiff, Perrett and his deputy acted at the Judge's "behest." Therefore, the defendant court clerks, like the judge, derive absolute immunity from the judicial function of the acts. See *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir.1980).

Plaintiff's claims for monetary damages against Judge Blanchet, Clerk of Court Perrett, and Deputy Clerk of Court Quibedeaux must be dismissed pursuant to the provisions of 28 U.S.C. §§1915(e)(2)(B)(iii) and 1915A(b)(2) since plaintiff "... seeks monetary relief from [defendants] who [are] immune from such relief..."

***3. Mandamus***

Plaintiff also asks the court to find that he is entitled to pursue his state court action and to impose non-specific sanctions against the defendants to ensure that his state action proceed "without further impediment..." [doc. 4, paragraph V] Plaintiff thus implies that he is entitled to mandamus relief. Federal courts are without power to issue writs of mandamus against state courts and state officers in the performance of their duties. See *Santee v. Quinlan*, 115 F.3d 355, 357 (5th Cir.1997); *Moye v. Clerk, DeKalb County Sup. Court*, 474 F.2d 1275, 1275-76 (5th Cir.1973). Therefore, to the extent that mandamus is sought, this court lacks jurisdiction to do so and such claims should be dismissed as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1). See *Santee*, 115 F.3d at 357 (affirming dismissal of petition for writ of mandamus as frivolous because federal courts lack the power to mandamus state courts in the performance of their duties).

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** pursuant to the provisions of 28 U.S.C. §§1915(e)(2)(B)(iii) and 1915A(b)(2) since plaintiff "... seeks monetary relief from [defendants] who [are] immune from such relief..." and, as frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1) since plaintiff seeks mandamus relief against state court officers.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 26, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)