RECEIVED
JUN 2 9 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JAMIE EDELKIND | CIVIL ACTION NO: 06-1813 |
| VERSUS | JUDGE DOHERTY |
| DANIEL BLANCHET, ET AL. | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

The Court is in receipt of plaintiff's Motion to Vacate the Judgment of Dismissal [Doc. 19], filed May 10, 2007, wherein plaintiff moves for the following relief [1]:

1. That Judge Doherty vacate the March 26, 2007/April 18, 2007 Judgment.
2. That Judge Doherty issue an apology to the plaintiff; specifically acknowledging her improper acts and bias.
3. That Judge Doherty recuse herself from presiding over any future matters involving the instant plaintiff.
4. That this case be designated to the Chief Judge for further handling.
5. That Magistrate Methvin's and Judge Doherty's notes, files, memoranda, and e-mails that contain any and all references to the Plaintiff be delivered to the clerk of court under seal, pending an official inquiry. [Doc. 19, p.5]

The Court presumes, although not stated, plaintiff brings this motion pursuant to Fed. R. Civ. P. 60(b). While the Court has considered imposing sanctions against plaintiff pursuant to Fed. R. Civ. P. Rule 11, it reluctantly declines to do so at this time, but rather, out of an abundance of caution and

---

[1] The Judgment of which plaintiff complains dismissed plaintiff's civil rights complaint with prejudice. Plaintiff's complaint alleged Fifteenth Judicial District Court Judge David Blanchet, Lafayette Parish Clerk of Court Lewis J. Perret and Deputy Clerk Karen Quibedeaux conspired to deprive plaintiff of his Constitutional "rights of access to the courts" [Doc. 1; 4] and due process of law by interfering with his ability to litigate child custody and support claims in Louisiana's Fifteenth Judicial District Court, in the civil matter entitled *Jamie Edelkind v. Suzanne Boudreaux*, Docket Number C-20001572-H2. Plaintiff requests: (1) damages in the amount of $1,000,000 [Doc. 1] or "an amount deemed appropriate" [Doc. 4], (2) the Court make a finding he is "entitled to pursue [his] state court case without further impediment by any of the defendants" [i.e. the state court judge] [Doc. 4], and (3) the Court impose sanctions against Judge Blanchet, Clerk of Court Perret and Deputy Clerk Quibedeaux.

giving plaintiff the benefit of the doubt (though perhaps undeserved), considers plaintiff's unfounded allegations and harassing rhetoric to be the product of plaintiff's lack of education in the practice of law, which in turn has led to his inability to draft legal documents in the manner befitting a federal court.[2]

Although plaintiff's baseless accusations border upon sanctionable conduct, the Court will address a certain number of allegations plaintiff has made in an effort to enlighten as plaintiff is *pro se*. First, plaintiff argues because the Judgment which adopts the Magistrate Judge's Report and Recommendation has two date stamps (one being March 26, 2007, the other April 18, 2007) [Doc. 17], the Court predetermined its ruling prior to receiving plaintiff's objection.[3] Plaintiff is mistaken. When the Magistrate Judge delivers a Report and Recommendation to the Clerk's office for filing, two versions of a judgment automatically accompany the Report and Recommendation. One form of judgment adopts the Magistrate's Report and Recommendation and notes no objections have been filed. The second version adopts the Magistrate Judge's Report and Recommendation in spite of the submission of objections. The Clerk's office retains the judgments until the time period for objections has tolled, and, after the time period has tolled, delivers the judgments to Chambers. Only when the Court diverges from the Magistrate Judges's Report and Recommendation (which is not

---

[2] See e.g., Doc. Nos. 10, 18, 19, 21 and 25 (p.5 - cover letter) for further detail.

[3] Plaintiff further states:

Clearly one can only conclude that this document was file stamped twice. Inescapably, one must adduce that the document itself existed as a physicality at least as early as March 26, 2007. Giving the Judge an undeserved benefit of the doubt, the Plaintiff is willing to accept the signature appendition as occurring on the later date of April 18, 2007. However, this does not excuse the court from having a presumption as to ordering the relief in advance of reception of the objection of the Plaintiff. [Doc. 19, p.2]

an unusual occurrence), does the Court draft its own judgment and discard the form judgments adopting the Report and Recommendation. Because this Court adopted the Magistrate's ruling, the form judgment was sufficient, and thus the two dates appear: "March 26, 2007" - the date the Report and Recommendation and form judgments were received by the Clerk's office, and "April 18, 2007," - the date the Court signed and filed the Judgment, which adopts the Ruling, into the record.

Second, plaintiff argues this Court intentionally ignored his objection and signed a judgment which noted the absence of objections to the Report and Recommendation. A review of the docket sheet reveals the Court's Judgment was signed and entered into the record on April 18, 2007. Plaintiff's objection to the Report and Recommendation was not received until April 20, 2007 – two days after the judgment issued. Thus, plaintiff's argument is completely, once again, without merit. More significantly, the Report and Recommendation specifically advised plaintiff he had ten (10) business days from service of the Report and Recommendation to file objections. The Report and Recommendation issued March 26, 2007. As such, plaintiff had until April 9, 2007 to file objections. However, this Court nonetheless, waited more than one week after plaintiff's deadline tolled to enter its Judgment, and even at that time, no objection had been lodged.[4]

Third, plaintiff argues the Magistrate Judge "deliberately timed her Report and Recommendation to coincide with the Plaintiff's transfer from the Western District of Louisiana."

---

[4] Plaintiff further argues, "The record does reflect that the court was well aware of the filed objection. The court even made reference to it when it denied the Plaintiffs [sic] request that this Judge recuse herself for bias." The Court is utterly perplexed by plaintiff's statement, as nowhere in that Ruling does the Court reference an objection lodged in this matter by plaintiff.

[Doc. 19, p.3][5] Plaintiff states in his conclusion:

4. Judge Doherty either deliberately committed a fraud by failing to acknowledge the objection filed by the Plaintiff to the magistrates [sic] Report and Recommendation; or committed a fraud by filing a Judgement knowing that the time for response had not yet begun to run.
5. The judge failed to consider the objections raised by the Plaintiff through a deliberate slander as contained within the twice filed Judgment.
6. Judge Doherty is helplessly and ponderously prejudiced against the Plaintiff; and is thus incapable of avoiding tainting his rights to a fair and impartial adjudication of his complaints.
7. For unexplored motivations, this court has continuously plotted to imprison, estrange, and grievously harm the Plaintiff. [Doc. 19, p.4]

Additionally, plaintiff accuses the Magistrate Judge and this Court of conspiracy to unlawfully deprive plaintiff access to the Court.[6] This Court can assure plaintiff that neither the Magistrate Judge nor this Court has the desire, luxury of time, interest in, or an awareness of plaintiff's presence in or absence from the State of Louisiana. Just as this Court does not alert the Bureau of Prisons of the Court's Rulings and other actions, neither does the Bureau of Prisons share with this Court its

---

[5] This Court notes a review of the docket sheet reveals plaintiff was transferred from Louisiana, at the latest by February 21, 2007, as that is the date mail sent by the Court to plaintiff was returned to the Court with a red stamp on the envelope, which reads:

RETURN TO SENDER
INMATE RELEASED/TRANSFERRED
ST MARTIN PARISH CORRECTIONAL CENTER-II [Doc. 11]

A notice of change of address, submitted by plaintiff, was received and filed March 12, 2007. [Doc. 12] The Magistrate Judge's Report and Recommendation issued March 26, 2007 (fourteen days after the Court received notice - from plaintiff - of his current address in Massachusetts) and was sent to the address provided by plaintiff in his notice of change of address. Thus, plaintiff's argument is, again, wholly without merit.

[6] Specifically, plaintiff writes, "Magistrate Methvin's conspiracy with Rebecca Doherty, to unlawfully deprive the Plaintiff of his right to access the court in a meaningful manner, failed!" He later concludes, "Judge Doherty colluded with Magistrate Methvin, by participating in the orchestration of an unresponsive Report and Recommendation; and by improperly entering an anticipatory judgment prior to a response by the Plaintiff." [Doc. 19, pp.3,4]

schedule of inmate transfers and other internal actions.

Due to the forgoing, the Court is of the opinion plaintiff's motion should be denied and sanctions perhaps considered. However, as plaintiff has now accused this Court as well as the Magistrate Judge of criminal activity, this Court hereby REFERS this matter to Chief Judge Richard T. Haik for reassignment; DECLINES to rule on movant's most recent conduct, and refers proper adjudication as to all remaining issues to the United States District Judge upon reassignment. This motion and all pending motions, are CONTINUED and will be RESET by the judge to whom the case is reassigned.

THUS DONE AND SIGNED this 29 day of June, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE